NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0034n.06
Filed: January 11, 2006

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     *Plaintiff-Appellee,* | ) | |
| | ) | |
| v. | ) | Nos. 04-1059, 04-1066, 04-3337 |
| | ) | |
| JOHANN LEPRICH, | ) | |
|     *Defendant-Appellant.* | ) | |
| _____ | ) | |
| | ) | |
| JOHANN LEPRICH, | ) | |
|     *Petitioner-Appellant*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHILIP WRONA, INTERIM DIRECTOR, | ) | |
|     *Respondent-Appellee.* | ) | ) |
| _____ | ) | |
| | ) | |
| JOHANN LEPRICH, | ) | |
|     *Petitioner-Appellant,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN ASHCROFT, ATTORNEY GENERAL, | ) | |
|     *Respondent-Appellee*. | ) | ) |

Appeal No. 04-1059: On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit
No. 2:86-CV-72531 – George C. Steeh, District Judge.

Appeal No. 04-1066: On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit
No. 2:03-CV-74052 – George C. Steeh, District Judge

Appeal No. 04-3337: On Petition for Review from the
Board of Immigration Appeals at Detroit

No. A08 272 762
Argued: March 15, 2005

Decided and Filed: _____

Before: NELSON, Circuit Judge; BATCHELDER Circuit Judge;
and O'MALLEY, District Judge.[*]

_____/

*O'MALLEY, J.* These consolidated appeals all relate to the citizenship status of Appellant Johann Leprich ("Leprich") and to a 1987 district court order revoking Leprich's United States citizenship ("the 1987 order"). Specifically, Leprich comes before this court to appeal the following: (1) the denial of his motion to vacate the 1987 order; (2) the denial of his petition for a writ of habeas corpus; and (3) the decision of the Board of Immigration Appeals ("BIA") finding Leprich removable from the United States.

Although the factual and procedural histories giving rise to these appeals are lengthy and complex, our legal determinations are not. Leprich's core argument is that the 1987 order did not constitute a "final" judgment, and, therefore, the district court's order revoking his citizenship in 1987 was invalid, the United States government unlawfully detained him for illegally re-entering the United States in 2003 because he is still a United States citizen, and, likewise, the immigration court lacked jurisdiction to hold removal proceedings against him because he is still a United States citizen. For the reasons stated below, we find that Leprich's core argument is without merit, and that his resulting conclusions, therefore, must also fail.

We, therefore, **AFFIRM** the district court's denial of Leprich's motion to vacate, we

_____

[*] The Honorable Kathleen O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

2

**AFFIRM** the district court's denial of Leprich's petition for a writ of habeas corpus, and we **AFFIRM** the BIA's decision finding Leprich removable from the United States.

## I.    BACKGROUND

### A.    Factual Background

Leprich was born in 1925 in Birk, Romania. In November 1943, Leprich became a member of the Nazi military organization known as the Waffen SS and, shortly thereafter, commenced service as a uniformed SS guard at the Mauthausen concentration camp in Austria, where he served until April or May 1944. Mauthausen was intended as a camp for severe punishment of the enemies of Nazi Germany, and inmates there were starved, beaten, tortured, and killed by a variety of methods, including gassing, hanging, strangling, heart injection, electrocution, beating, drowning, burning, starving, and shooting. Inmates at Mauthausen included Jews, Gypsies, Jehovah's Witnesses, and Poles, as well as members of almost every nationality of Europe. While at Mauthausen, Leprich became a member of the SS Totenkopf-Sturmbann (Death's Head Battalion), which was later found by the International Military Tribunal at Nuremberg to be a criminal organization involved in "the persecution and extermination of Jews, brutalities, and killings in concentration camps, excesses in the administration of occupied territories, administration of the slave labor program and the mistreatment and murder of prisoners of war." Later, in June 1945, Leprich was captured by the United States Army and held as a prisoner of war until he was released in June 1946.

On February 12, 1952, Leprich entered the United States and obtained a visa pursuant to the Displaced Persons Act of 1948, as amended ("DPA"). In his signed and sworn visa application, Leprich listed his residences through 1946 as follows: "1939-1943 Birk, Rumania; May, 1945,

3

soldier in Hungarian army; 1946, Sopron, Hungary." Upon arriving in the United States, Leprich signed and swore in an affidavit that he had "never advocated or assisted in the persecution of any person because of race, religion, or national origin." He never disclosed to any United States official that he had been a member of the Waffen SS, the SS Totenkopf-Sturmbann, or a guard at Mauthausen. He also had never been a soldier in the Hungarian army as he claimed, nor had he ever lived in Sopron, Hungary. Leprich was naturalized as a United States citizen on December 30, 1958.

In 1986, the United States government, through the Office of Special Investigations ("OSI") for the Criminal Division of the Department of Justice, filed an eight count complaint against Leprich in the United States District Court for the Eastern District of Michigan, seeking to revoke his citizenship pursuant to the Immigration and Nationality Act of 1952, as amended ("INA"). The complaint alleged that Leprich made willful misrepresentations and omissions of material fact in procuring a February 4, 1952 certificate of eligibility for immigration; in securing a February 12, 1952 immigration visa and alien registration; in entering the United States on March 29, 1952; and, ultimately, in obtaining a December 30, 1958 court order of naturalization. Each of the eight counts sought the following relief: (1) cancellation of Leprich's naturalization certificate and revocation of his United States citizenship; (2) a judgment restraining and enjoining Leprich from claiming any rights under any document evidencing United States citizenship; (3) a judgment requiring Leprich to surrender and deliver his naturalization certificate; and (4) such other relief as appropriate.

The government moved for summary judgment, and, on July 13, 1987, the district court granted the government's motion on two counts: Count I (unlawful entry into the United States in violation of the DPA as a person who advocated or assisted in the persecution of any person because of race, religion, or national origin) and Count IV (unlawful entry into the United States in

4

violation of the DPA for willful misrepresentations and omissions of material fact made in the affidavit supporting his visa application). In a separate order, on July 10, 1987, the district court stated that "IT IS ORDERED AND ADJUDGED that the plaintiff's motion for summary judgment is granted," and further granted the government the three specific forms of relief it requested (*i.e.*, cancelling Leprich's certificate of naturalization and revoking his United States citizenship; restraining and enjoining Leprich from claiming any rights, privileges, or advantages under any document evidencing United States citizenship; and requiring Leprich to immediately surrender his certificate of naturalization and any passport or other documentary evidence of citizenship).

Leprich did not appeal the district court's 1987 decision; rather, he fled to Canada before the government initiated removal proceedings. Leprich claims to have resided in Canada from 1987 to 2003, but he renewed his Michigan driver's license twice during the 1990s, and the government suspected he remained in the United States during portions of that time. Leprich returned to the United States in April 2003 to visit his wife in Michigan, and, on July 1, 2003, agents from the Department of Homeland Security ("DHS") arrested Leprich after obtaining a lawful search warrant. He has been in custody since his arrest in July 2003.[1]

B.      **Procedural Background**

On October 7, 2003, after being taken into custody, Leprich filed a motion in the United States District Court for the Eastern District of Michigan seeking to vacate the 1987 order revoking his citizenship. In that motion, Leprich argued that, in 1987, the district court granted the government only partial summary judgment, and, therefore, the order revoking Leprich's citizenship

---

[1]      On March 15, 2004, Leprich's motion for release on bail pending appeal was denied.

was not a final appealable judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Because the order was not a final appealable order, according to Leprich, it was not a valid revocation of his citizenship. On December 10, 2003, the district court denied Leprich's motion to vacate, and Leprich now appeals.

Also on October 7, 2003, Leprich filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing again that the district court's 1987 order was not a final appealable order, and, therefore, that he is being detained unlawfully because he is still a United States citizen. On December 10, 2003, the district court denied Leprich's petition for a writ of habeas corpus, and Leprich now appeals.

Lastly, after arresting Leprich in 2003, DHS began administrative removal proceedings, arguing that, because Leprich's citizenship had been revoked in 1987, he is subject to removal. In a decision dated November 21, 2003, an immigration judge found Leprich removable on the basis of an unlawful entry into the United States. On March 4, 2004, the BIA affirmed that decision. Leprich filed a petition for judicial review in this court. Leprich's petition for review has been consolidated for submission with his other two appeals.

## II.    ANALYSIS

We address Leprich's appeals in the same order in which we described them above: (1) the denial of his motion to vacate the 1987 order; (2) the denial of his petition for a writ of habeas corpus; and (3) the decision of the BIA finding Leprich removable. As to Leprich's first appeal, his inability to obtain relief is largely the result of his own doing. Rather than appealing the district court's 1987 order (or challenging its finality), Leprich chose to flee the country and elude execution of the order for over sixteen years, challenging its validity only after being detained by United States

6

immigration authorities. Although we conclude that the district court's 1987 order is a final order and would have remained so regardless of how long Leprich waited to challenge it, his remaining arguments in support of his motion to vacate clearly are time-barred due to his extraordinary delay. In addition, we can dispose of Leprich's second appeal based on our determination that the 1987 order was, indeed, a final order. As to his appeal of the BIA's decision, his arguments are simply without merit.

One common thread runs through each of Leprich's three appeals, and, therefore, we will address it at the outset of our analysis. Leprich's core argument is that the district court's 1987 order was not a final order because it was based on the grant of *partial* summary judgment. Because the district court granted summary judgment on only two of the government's eight counts, Leprich argues, the judgment was not final and could not provide the basis for a final citizenship revocation order. The district court denied Leprich's motion to vacate, determining, in part, that the 1987 order was a final appealable order primarily because the government's complaint presented the same claim for relief under eight theories of recovery, thereby presenting only one claim on which it won final summary judgment.

We hereby adopt the thorough and well-reasoned opinion of the district court, which concluded that the 1987 opinion and order constituted a final appealable judgment. That conclusion is bolstered by the fact that the district court, in 1987, issued an opinion and then, consistent with Rule 58 of the Federal Rules of Civil Procedure, issued a separate judgment. The separate judgment, indicating that "IT IS ORDERED AND ADJUDGED . . . ," further reflects an intention to enter final judgment in the case, dispelling any doubts that now may exist as to the finality of the summary judgment.

7

### A.     The 1987 Order

In addition to arguing that the district court should vacate its 1987 order because it was not a "final" order, Leprich also argued before the district court that it should vacate the 1987 order because (1) the district court lacked jurisdiction to redetermine his visa eligibility and lawful admission into the United States, (2) the government sought revocation of Leprich's United States citizenship under the wrong statute, (3) Leprich's previous counsel did not oppose the government's motion for summary judgment, (4) Leprich enjoys a substantial defense to Counts I and IV (the counts for which summary judgment was granted), (5) the district court improperly relied upon disputed facts and assessments of credibility, and (6) the district court failed to apply the appropriate materiality test.

After determining that the 1987 order was a final order, the district court treated the remainder of Leprich's arguments as part of a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)") and found that Leprich's arguments were barred by the relevant time limits set forth in Rule 60(b). *See* Fed. R. Civ. P. 60(b) ("The motion shall be made *within a reasonable time,* and for reasons (1) (mistake), (2) (newly discovered evidence) and (3) (fraud), *not more than one year* after the judgment, order, or proceeding was entered or taken") (emphasis added).

#### 1.     *Standard of Review*

We review the district court's denial of a Rule 60(b) motion for abuse of discretion. *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001).  However, because the district court's characterization of Leprich's motion to vacate as a motion brought under Rule 60(b) is an interpretation and application of the Federal Rules of Civil

8

Procedure, and thus a question of law, we review that narrow decision *de novo*. *Kalamazoo River Study Group v. Rockwell Intern. Corp.*, 355 F.3d 574, 583 (6th Cir. 2004).

### 2. *Discussion*

On appeal, Leprich maintains two arguments: (1) the district court lacked jurisdiction to redetermine his visa eligibility and lawful admission into the United States; and (2) the government sought revocation of Leprich's United States citizenship under the wrong statute. As an initial matter, we agree with the district court's characterization of Leprich's motion to vacate as a Rule 60(b) motion; Leprich's motion sought relief from a final order entered against him, a matter ordinarily governed by Rule 60(b). As such, Rule 60(b)'s time limits apply to Leprich's motion, and his remaining arguments clearly are time-barred by his sixteen year delay in challenging the 1987 order.

As to Leprich's claim that the district court lacked subject matter jurisdiction to redetermine his visa eligibility, that claim is governed by Rule 60(b)(4) as a claim that the judgment is void. *See Antoine v. Atlas Turner*, 66 F.3d 105, 108 (6th Cir. 1995). Motions pursuant to 60(b)(4) shall be made "within a reasonable time," a limit determined on a case-by-case basis by the length and circumstances of the delay in filing, prejudice to the opposing party, and any circumstances warranting equitable relief. *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990). In this case, Leprich filed his motion to vacate more than sixteen years after the district court entered the 1987 order. His delay was caused solely by his own decision to flee the United States to avoid enforcement of the order he now challenges. It is well settled that a Rule 60(b) motion "cannot be used to avoid the consequences of a party's decision . . . to forego an appeal from an adverse ruling." *Pierce v. United Mine Workers of America Welfare and Retirement Fund*, 770 F.2d 449, 451-52 (6th

9

Cir. 1985). Considering the circumstances of this case, we find that the district court correctly concluded that Leprich's 60(b)(4) claim is time-barred.

As to Leprich's claim that the government sought revocation of his citizenship under the wrong statute, that is a claim of legal error and is subsumed in the category of mistake under Rule 60(b)(1). *See Pierce*, 770 F.2d at 451. Leprich was required to raise this claim "within a reasonable time, and . . . not more than one year after the judgment, order, or proceeding was entered or taken." Fed. R. Civ. P. 60(b). Having failed to do so, Leprich's second claim is also time-barred. We find the district court properly characterized Leprich's motion to vacate as a Rule 60(b) motion and correctly determined that his claims were unreasonably untimely. We, therefore, do not address the merits of Leprich's claims.

### B.    Petition for Writ of Habeas Corpus

Leprich also appeals the denial of his petition for a writ of habeas corpus. In 2003, Leprich petitioned for a writ of habeas corpus solely on the ground that, because the 1987 order was not a final appealable judgment, the order was not a valid revocation of his United States citizenship, and that DHS is, therefore, unlawfully holding him in custody. Because we adopt the district court's opinion as to the finality of the 1987 order, we find that its judgment entry constituted a valid revocation of Leprich's citizenship. The government's detention of Leprich, therefore, is not unlawful, and the district court correctly denied Leprich's petition for a writ of habeas corpus.

### C.    The BIA Decision

Lastly, Leprich challenges the BIA decision affirming an immigration judge's ruling that Leprich was removable because, as a non-citizen, he failed to present the required documentation when he entered the United States from Canada in 2003. On appeal, Leprich argues that (1) the

immigration court had no removal jurisdiction over him because he remained, and still remains, a

United States citizen, and (2) the proper authorities did not sign the removal charges against him.[2]

Because we have concluded already that the 1987 order was a valid revocation of Leprich's United

States citizenship, we do not address Leprich's first argument again. In any event, the immigration

judge and the BIA were bound to apply the district court's order until altered, amended, or vacated

either by the district court or by this court, none of which had occurred at the time of its decision.

Leprich's remaining argument raises the question of which government officials are

authorized to bring charges to initiate removal proceedings in immigration courts. Agents from the

Justice Department's OSI as well as agents from DHS were involved in authorizing the charging

documents in his removal proceeding, and Leprich contends the officials from OSI overstepped the

bounds of their authority in some instances, thereby invalidating the proceeding. We address this

argument below.

### 1. *Standard of Review*

We review the BIA's legal conclusions *de novo*, but with substantial deference to the BIA's

reasonable interpretations. *Hamama v. INS*, 78 F.3d 233, 239 (6th Cir. 1996). The BIA's

interpretation of immigration statutes should be affirmed unless the BIA's view is "arbitrary,

capricious, or manifestly contrary to the statute." *Id.* Factual findings made in removal proceedings

---

[2]     Leprich also argues that OSI attorneys have no authority to represent the Secretary of Homeland Security in a removal proceeding, as they did in the removal proceeding conducted against Leprich. Although Leprich briefed this issue before the BIA, he did not raise it before the immigration judge, and the BIA did not address it in its decision. Because a brief review of the applicable regulations reveals that this argument is likely without merit, and, because Leprich waived the argument by not raising it initially before the immigration judge, we decline to address it further.

are reviewed under the substantial evidence standard, which requires only that the findings be "substantially reasonable" based on the evidence presented. *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999).

### 2. *Notice to Appear*

Leprich argues that the Notice to Appear (a required part of the charging documents in a removal proceeding, akin to a civil complaint or criminal indictment) filed against him was not signed by the proper authorities, and, therefore, the immigration judge lacked jurisdiction over his case. The Director of OSI signed *each page* of the Notice to Appear, and an Interim Associate Special Agent in Charge from DHS signed the *first page*.

Leprich concedes, as he must, that the signature of the DHS agent would have been sufficient to authorize the Notice to Appear if the DHS agent had signed each page. Even assuming that a signature appearing on only the first page would have been legally insufficient to authorize the document (which is an unwarranted assumption), we agree with the BIA that the OSI Director's signature constitutes proper authorization of the Notice to Appear. The government brought charges against Leprich, in part, under the Holtzman Amendment to the INA, and the Director of OSI is delegated with authority to take legal action to deport persons described in the Holtzman Amendment. The OSI also is charged with the responsibility of enforcing the INA and laws related to Nazi war crimes suspects. With proper deference to the BIA's reasonable interpretation, we find that the BIA correctly determined that the OSI Director's signature constitutes proper authorization

of the Notice to Appear in this case.[3]

## III.    CONCLUSION

For the foregoing reasons, the district court's denial of Leprich's motion to vacate the 1987

order is **AFFIRMED**;  the denial of Leprich's petition for a writ of habeas corpus is **AFFIRMED**,

and the decision of the BIA finding that Leprich is removable is **AFFIRMED**.

---

[3]    Leprich also argues that the government improperly filed two amended Notices to Appear.  Because the second amended Notice to Appear replaced the first amended Notice to Appear (and was nearly identical except that it was signed by a different official and deleted an aspect of one charge), Leprich's arguments about the first amended Notice to Appear are moot.  Leprich's argument that the government untimely submitted the second amended Notice to Appear is without merit.  The Code of Federal Regulations provides that additional or substituted charges of deportability and/or factual allegations may be lodged "*at any time* during deportation or removal proceedings."  8 C.F.R. § 1003.30 (emphasis added).  The second amended Notice to Appear was filed prior to the completion of the proceeding, and, therefore, its filing falls within the broad latitude of 8 C.F.R. § 1003.30.